No. 09-4853

IN THE UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

UNITED STATES OF AMERICA,
*Plaintiff/Appellee*,

v.

BRIAN PORTIS,
*Defendant/Appellant.*

On Appeal from the United States District Court
for the Eastern District of Virginia
at Richmond

BRIEF OF THE APPELLANT

Jennifer M. Newman, Esq., P.C.
7 East Franklin Street
Richmond, Virginia 23219
VSB # 45702
(804) 421-9975
(804) 643-1551 facsimile
*Counsel for Appellant*

# <u>TABLE OF CONTENTS</u>

Table of Authorities. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . ii-iii

Statement of Jurisdiction. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

Statement of the Issue. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1-2

Statement of the Case.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2

Statement of Facts. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2-7

Summary of Argument.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

Argument

       THE DISTRICT COURT ERRED IN DENYING
       PORTIS' MOTION TO SUPPRESS THE EVIDENCE
       SEIZED AND STATEMENTS OBTAINED INCIDENT
       TO HIS ARREST ON JUNE 13, 2007 IN VIOLATION
       OF HIS RIGHTS PURSUANT TO THE FOURTH
       AMENDMENT OF THE UNITED STATES
       CONSTITUTION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7-16

Conclusion. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  16

Request for Oral Argument. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Certificate of Compliance. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Certificate of Service. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

# TABLE OF AUTHORITIES

## Cases

*Brown v. Illinois*, 422 U.S. 590 (1975). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Florida v. Bostick*, 501 U.S. 409 (1991). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*Holloway v. Wolff*, 482 F.2d 110 (8 Cir. 1973). . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Horton v. California*, 496 U.S. 128 (1990). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Maryland v. Buie*, 494 U.S. 324 (1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Michigan v. Chestnut*, 486 U.S. 567 (1988) . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Mora v. The City of Gaithersburg, MD*, 519 F.3d 216 (4th Cir. 2008) . . . . . .   8, 12

*Ornelas v. United States*, 517 U.S. 690 (1996). . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Payton v. New York*, 445 U.S. 573 (1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Schneckloth v. Bustamonte*, 412 U.S. 218 (1973). . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Boone*, 245 F.3d 352 (4th Cir.),
*cert. denied*, 532 U.S. 1031 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*United States v. Brodie*, 975 F. Supp. 851 (N.D. Tex. 1997). . . . . . . . . . . . . . . 10

*United States v. Cephas*, 254 F.3d 488 (4th Cir. 2001) . . . . . . . . . . . . . . . . . . . 11

*United States v. Collazo*, 732 F.2d 1200 (4th Cir. 1984). . . . . . . . . . . . . . . . . . . 13

*United States v. Gould*, 364 F.3d 578 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . 10

*United States v. Jackson*, 131 F.3d 1105 (4th Cir. 1997). . . . . . . . . . . . . . . . . . 13

ii

*United States v. Jarrett*, 338 F.3d 339 (4th Cir. 2003),
*cert. denied*, 124 S. Ct. 1457 (2004) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  7

*United States v. Mendenhall*, 446 U.S. 544 (1980). . . . . . . . . . . . . . . . . . . . . .  14-16

*United States v. Mowatt*, 513 F.3d 395 (4th Cir. 2008). . . . . . . . . . . . . . . . . . . .  11

*United States v. Thomas*, 955 F.2d 207 (4th Cir. 1992).. . . . . . . . . . . . . . . . .  15-16

*Wong Sun v. United States,* 371 U.S. 471 (1963). . . . . . . . . . . . . . . . . . . . . . . .  14-16

<u>Statutes and Rules</u>

18 U.S.C. § 922(g)(3). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2, 4-7

18 U.S.C. § 3231. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

18 U.S.C. § 3742. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1, 5

21 U.S.C. § 844. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  2-3

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  1

<u>Secondary Authority</u>

2 La Fave, *Search and Seizure*, § 8.2(d). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  14

No. 09-4853

## IN THE UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

———————————

UNITED STATES OF AMERICA,
*Plaintiff/Appellee,*

v.

BRIAN PORTIS,
*Defendant/Appellant.*

———————————

On Appeal from the United States District Court
for the Eastern District of Virginia
at Richmond

———————————

BRIEF OF THE APPELLANT

———————————

## STATEMENT OF JURISDICTION

The district court had jurisdiction over this federal criminal case pursuant to

18 U.S.C. § 3231 and entered the judgment of conviction and sentence on July 1,

2008 and again on September 8, 2009.  Brian Portis timely filed his notice of appeal

on September 13, 2009, resulting in this Court's jurisdiction pursuant to 28 U.S.C.

§ 1291 and 18 U.S.C. § 3742.

## STATEMENT OF THE ISSUE

Page 1 of  19

Whether the district court erred in denying Portis' motion to suppress the evidence seized and the statements obtained incident to his arrest on June 13, 2007 due to the violation of his rights pursuant to the Fourth Amendment of the United States Constitution.

**STATEMENT OF THE CASE**

During the January 2008 term, a federal grand jury in the Eastern District of Virginia indicted Portis with one (1) count of possession of firearm by unlawful user in violation of 18 U.S.C. § 922(g)(3) and (1) count of possession of marijuana in violation of 21 U.S.C. § 844. (J.A. 9-10).

On April 15, 2008, after the trial court denied his motion to suppress, Portis entered a conditional plea of guilt on both counts preserving his right to raise the constitutional issues in this Court. (J.A. 116-133). On September 8, 2009, on remand from this Court, Portis was found guilty of both counts (J.A. 155-160, 162).[1] Portis timely notice his appeal on September 13, 2009. (J.A. 170-171).[2]

---

[1] On July 9, 2009, this Court's mandate was filed, remanding this case to the district court for further proceedings. This Court did not rule on the merits raised in this Brief. (J.A. 146-151).

[2] A pre-sentence report was prepared and on July 1, 2008, the district court sentenced Portis to 15 months imprisonment on each count, to be served concurrently and on September 8, 2009, the district court sentenced Portis to time served on each count. (J.A. 138-139, 159-160). No sentencing issues will be raised in this Brief.

Page 2 of 19

## STATEMENT OF FACTS

Shortly before 7:00 p.m. on June 13, 2007, Richmond City Police Officers responded to 5524 Calvert Drive in the City of Richmond, Virginia to investigate a shooting from a maroon or brown colored pickup with a ladder rig attached to it. (J.A. 38, 44).[3]

Officers Aeschlimann and Watson testified that they recognized the description of the vehicle from a traffic stop in front of the Calvert Drive address on June 6, 2007 where Portis was the driver of the vehicle. (J.A. 39, 69, 100). During this traffic stop, Officer Aeschlimann located a fully loaded magazine in the vehicle but no firearm. (J.A. 40, 101). Portis informed the officers that he did not have any firearms in his house or car. (J.A. 40-41). He further informed the officers that he had access to firearms had his mother's home. (J.A. 41, 101-102). Also, Portis informed the officers that he was retired from the military and an expert marksman. (J.A. 41, 101).

Additionally, prior to responding to the Calvert Drive address on June 13, 2007, Officer Aeschlimann received additional information that Portis was a "person of interest" in a homicide investigation. (J.A. 45-46). On June 13, 2007,

---

[3] Portis was not charged with the attempted shooting as the officers did not have probable cause. (J.A. 58, 110).

Officers Aeschlimann and Watson arrived at 5524 Calvert Drive in a marked police car while Officers Hamilton and Cobb arrived in another marked police car. (J.A. 50-51, 73-74).

As the officers approached the residence, the officers saw Portis standing in the open doorway of his residence and an unknown individual standing on the front stoop. (J.A. 49, 91, 103). When Officer Aeschlimann exited his car and called out, "Hey, Brian," Portis entered the residence, leaving the front door open while the unknown individual remained outside. (J.A. 50, 74-75, 103-104). Immediately after being commanded, at gunpoint, to come outside, Portis came out onto the porch and was ordered to the ground at gunpoint. (J.A. 50-51, 75, 92, 104). Portis and the unknown individual were then handcuffed and placed into investigative detention. (J.A. 51, 105). Portis was patted down and no weapons were found. (J.A. 51, 78, 105). In response to his question, Portis informed Officer Aeschlimann that there was no one else inside the house. (J.A. 78, 113).

At the direction of Officer Aeschlimann, Officer Hamilton conducted a protective sweep of the house to determine if there were weapons inside the house and if anyone was inside the house. (J.A. 51, 79, 93, 96). Officer Aeschlimann testified that he requested the protective sweep based on the following factors: (1) the loaded magazine found on June 6; (2) the fact that Portis was retired military

and an expert marksman; (3) that Portis was a "person of interest" in a homicide investigation; (4) that he was responding to a shooting call; (5) that an unknown individual was at the house; and (6) the fact that Portis entered his house when the officers first arrived. (J.A. 51-53). Officer Aeschlimann admitted that despite all of these factors, he would not have ordered a protective sweep if Portis had not entered the house when the officers first arrived. (J.A. 55). Officer Aeschlimann testified that Officer Hamilton saw a metal spoon with charred off-white residue on the floor in the bedroom, in plain view, during the sweep. (J.A. 55, 97). Officer Hamilton did not locate any individuals inside the house and did not see any weapons inside the house. (J.A. 55, 95-96).

During the protective sweep, Officer Watson read Portis his *Miranda* warnings and questioned him. (J.A. 56, 105). In response to his questions, Portis allegedly admitted to Officer Watson that he had a firearm, described as .40 caliber Smith and Wesson semi-automatic pistol, inside the house, behind the couch. (J.A. 57, 106).

Shortly thereafter, Portis' roommate arrived on scene and the police spoke with both residents to obtain consent to search the house. Portis was no longer handcuffed but was told that he was not free to leave. (J.A. 58-59, 107). Officer Aeschlimann told Portis that he knew there was cocaine residue and a firearm inside

the house.  (J.A. 84, 97-98, 110).  Officer Aeschlimann explained to Portis that, without consent, because of the presence of paraphernalia, he would go to the magistrate and obtain a search warrant for the house.  (J.A.  60, 86, 97, 110-112). He told Portis that the house "would be frozen" during this process and that the process could take several hours.  (J.A. 60, 111).  After this detailed description of the search warrant process which lasted more than an hour, Portis provided verbal and then written consent.  (J.A. 61-63, 86, 98).[4]

Prior to searching the home pursuant to consent, Officer Aeschlimann questioned Portis about drugs in the home.  (J.A. 64).  Portis allegedly again admitted that he had a firearm behind the couch in the living room, that he had a "gravity bong" inside the bedroom, and that he smoked marijuana "two or three times a week."  (J.A. 65-65).  Portis allegedly admitted to smoking marijuana since his release from the Army in 2001 and obtaining the firearm from a family member in January 2005.  (J.A. 65-67).

During the search of the house, the officers seized a firearm from behind the couch which Portis allegedly identified as his, a small amount of marijuana residue, and marijuana paraphernalia from Portis' bedroom.  (J.A. 67).

_____

[4] Portis' roommate also provided verbal and then written consent to search the house.  (J.A. 60-61).

On April 15, 2008, the trial court denied his motion to suppress finding that there were **no** exigent circumstances but that his consent was freely and voluntarily given. (J.A. 126-128). On September 8, 2009, the district court made findings of guilt for possession of marijuana and possession of a firearm by a controlled drug user based on the evidence and testimony presented during the motion to suppress and Portis preserved his right to raise the constitutional issues to this Court. (J.A. 155-157, 158-159, 162).

## SUMMARY OF ARGUMENT

The district court erred in denying Portis' motion to suppress the evidence seized and statements obtained incident to his arrest on June 13, 2007 in violation of his rights pursuant to the Fourth Amendment of the United States Constitution. Specifically, the officers unlawfully entered Portis residence, without his consent and without exigent circumstances, thereby tainting the consent later obtained and the evidence and statements obtained.

## ARGUMENT

THE DISTRICT COURT ERRED IN DENYING PORTIS' MOTION TO SUPPRESS THE EVIDENCE SEIZED AND STATEMENTS OBTAINED INCIDENT TO HIS ARREST ON JUNE 13, 2007 IN VIOLATION OF THIS FOURTH AMENDMENT RIGHTS.

A.    Standard of Review

In reviewing a district court's ruling on a motion to suppress, this Court must review findings of fact for clear error and conclusions of law *de novo*. *Ornelas v. United States*, 517 U.S. 690, 699 (1996); *United States v. Jarrett*, 338 F.3d 339, 343-44 (4th Cir. 2003), *cert. denied*, 124 S. Ct. 1457 (2004).

B.    Applicable Law

The Fourth Amendment is implicated once an individual has been "seized," that is, when the subject is no longer "free to leave." *Michigan v. Chestnut*, 486 U.S. 567, 573 (1988). A warrantless entry of a person's home is presumptively unreasonable. *Payton v. New York*, 445 U.S. 573 (1980). "[T]he Fourth Amendment favors a warrant based on probable cause, but because the ultimate touchstone of the Fourth Amendment is reasonableness, the warrant requirement is subject to certain exceptions, . . ." *Mora v. The City of Gaithersburg, MD*, 519 F.3d 216, 222 (4th Cir. 2008) (internal quotation marks and citations omitted).

There are several exceptions to the warrant requirement of the Fourth Amendment, two of which are discussed in relation to the instant case: (1) protective sweeps; and (2) exigent circumstances.

C.    Argument

1.    THE INITIAL ENTRY AND PROTECTIVE SWEEP OF PORTIS' HOUSE WERE ILLEGAL.

Page 8 of 19

## Protective Sweep Doctrine

The Fourth Amendment permits a properly limited protective sweep in conjunction with an in-home arrest when the searching officer possesses a reasonable belief based on specific and articulable facts that the area to be swept harbors an individual posing a danger to those on the arrest scene. *Maryland v. Buie*, 494 U.S. 325 (1990). The United States Supreme Court defined this concept as follows:

> A "protective sweep" is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others. It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding . . . [T]he Fourth Amendment would permit the protective sweep undertaken here if the searching officer "possessed a reasonable belief based on 'specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted' the officer in believing," that the area swept harbored an individual posing a danger to the officers or others.

*Maryland v. Buie*, 494 U.S. 324, 327 (1990) (internal citations omitted). Clearly, this doctrine only applies where an arrest has been made and made **inside** the home.

In the instant case, Portis had not been arrested at the time of the protective sweep. The uncontroverted evidence was that at the time of the protective sweep, Portis and the unknown individual had been seized but not arrested. The officers had absolutely no information that anyone other than Portis was in the house and

they believed he lived alone.  Additionally, the alleged shooting call they responded to did not occur at the home.

In sum, the Government did not produce a scintilla of evidence of "specific and articulable facts which, taken together with the rational inferences from those facts, reasonably warranted" that the house harbored an individual posing a danger to the officers or others.  In fact, Officer Watson testified that he conducted the protective sweep to determine if there were firearms inside the residence, or if there was an injured person inside.

This lack of information did not provide an articulable basis upon which to justify the protective sweep.  *See United States v. Brodie*, 975 F. Supp. 851 (N.D. Tex. 1997) (protective sweep was not justified where defendant was arrested outside of his house and the officers did not articulate specific facts leading them to believe the house harbored individuals posing a danger).  Thus the sweep of Portis' house was not justified under the protective sweep exception to the warrant requirement and was therefore conducted in violation of Portis' Fourth Amendment rights.

Even if this Court were to determine that a protective sweep need not be incident to an arrest, Portis contends that the facts of this case would still not justify the illegal entry into his house for all of the reasons cited above.

In *United States v. Gould*, 364 F.3d 578 (5th Cir. 2004), the Court held that there are four requirements that must be satisfied for a valid in home protective sweep. First, the police must not have entered the home illegally. Second, the protective sweep must be supported by a reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger to those on the scene. Third, the protective sweep may not be a full search and no more than a cursory inspection of those spaces in which a person can be found. Fourth, the sweep can last no longer than is necessary to dispel the reasonable suspicion of danger.

In the instant case, the officers entered the home illegally and did not have a reasonable articulable suspicion that the home harbored an individual posing a danger to those on scene. Thus, there were absolutely no facts to support the police officers entry into Portis' house for purposes of a protective sweep.

## Exigent Circumstances

First, it is important to note that the district court specifically determined that exigent circumstances did **not** exist at the time of the illegal entry into Portis' home and this determination should remain undisturbed on appeal. (J.A. 127).

"It is well established that, even when officers have probable cause to believe that contraband is present in a home, a warrantless search of the home is unlawful unless exigent circumstances exist at the time of entry." *United States v. Mowatt*,

513 F.3d 395, 399 (4th Cir. 2008). The exigency exception applies when officers "have probable cause to believe that evidence of illegal activity is present and [ ] reasonably believe that evidence may be destroyed or removed before they could obtain a warrant," *United States v. Cephas*, 254 F.3d 488, 494-95 (4th Cir. 2001) or when "speed is essential to prevent escape or harm to police or others." *Mora*, 519 U.S. at 226.

At the time of the illegal entry into the house, Portis and the unknown individual were handcuffed and detained by the officers. Again, the Government failed to produce any evidence that evidence may have been destroyed or removed from the house before a warrant could be obtained. In addition, the Government failed to produce any evidence that the illegal entry was necessary in order to prevent harm or escape. The officers testified that they responded to 5524 Calvert Drive because they believed Portis was a suspect in the alleged shooting incident. Immediately upon arrival, they encountered Portis. The officers had no information that any other individuals were involved and, in fact, had information that no one else was inside the home. Even more telling was the fact that consent was obtained almost an hour after their arrival on scene.

In the instant case, the officers entered the home illegally. They did not have probable cause to believe that evidence of a illegal activity was present inside the

home and they did not have a reasonable belief that the evidence was at risk of being destroyed before they could obtain a search warrant. Further, the officers did not have a reasonable belief that there was anyone else in the house nonetheless someone they needed to prevent from escaping or harming the police or others.

Thus, there were absolutely no facts to support the police officers entry into Portis' house based on exigent circumstances. In fact, the district court specifically found that exigent circumstances were not present in this case and this finding should remain undisturbed.

**Plain View**

This doctrine "authorizes warrantless seizures of incriminating evidence when (1) the officer is **lawfully** in a place from which the object may be plainly viewed; (2) the officer has a lawful right of access to the object itself; and (3) the object's incriminating character is immediately apparent." *United States v. Jackson*, 131 F.3d 1105, 1009 (4th Cir. 1997) (citing *Horton v. California*, 496 U.S. 128, 136-137 (1990).

This doctrine does not apply as Officer Watson was **unlawfully** inside Portis' home at the time he observed the drug paraphernalia. Thus, the plain view doctrine does not support the warrantless entry into Portis home and eventual seizure of the contraband.

Page 13 of 19

## **Invalid Consent**

Where consent to search is given following an unlawful entry or arrest, "there is a strong possibility that the consent will be found invalid." *See United States v. Collazo*, 732 F.2d 1200, 1204 n. (4th Cir. 1984). Specifically, where government agents inform a defendant that they have entered his house and are in control thereof and that they have found contraband, there is a strong possibility that the consent is a fruit of the original illegal entry. *See Holloway v. Wolff*, 482 F.2d 110 (8 Cir. 1973); 2 La Fave, *Search and Seizure*, § 8.2(d); *see also United States v. Thomas*, 955 F.2d 207, 211 (4th Cir. 1992).

First, this Court must look at the "totality of the circumstances" to determine whether consent was knowing and voluntary, which must be proven by a preponderance of the evidence. *See e.g., United States v. Mendenhall*, 446 U.S. 544 (1980); *United States v. Boone*, 245 F.3d 352, 361-63 (4th Cir.), *cert. denied*, 532 U.S. 1031 (2001).

Even if this Court were to hold that Portis gave consent to the search after the illegal entry, this Court must find that this consent was not freely and voluntarily given. *See Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). The Government failed to establish that Portis' consent was "sufficiently an act of free will to purge the primary taint" of the illegal detention. *See Wong Sun v. United States,* 371 U.S.

471, 486 (1963).

In the instant case, consent was obtained after Portis had been handcuffed for more than an hour and told he was not free to leave. More importantly, this consent was obtained **after** the illegal entry into Portis' home and after he was "propagandized" by the police when they informed him that if he did not consent, they would secure the house for several hours while they obtained and then executed a search warrant. In addition, Portis was specifically told that the drug paraphernalia had been found inside the home and that the officers were aware of a firearm inside the residence. It was made clear that the officers intended to and would obtain a search warrant for the residence based on this information. Thus, any consent this Court may find was obtained as a result of the illegal entry and is therefore invalid as a "fruit of the poisonous tree. *United States v. Thomas*, 955 F.2d 207.

### Taint of Prior Illegal Entry, Search and Seizure

Because the warrantless entry of Portis' house was illegal, all evidence seized and statements obtained as a result of such illegal conduct must be suppressed. All of the evidence was tainted by the illegal entry of Portis' house. During this illegal entry and search, Portis was seized and detained in handcuffs by the police. *See United States v. Mendenhall*, 446 U.S. 544; *Florida v. Bostick*, 501 U.S. 409

Page 15 of 19

(1991). The Government failed to establish that Portis' consent was "sufficiently an act of free will to purge the primary taint" of the illegal detention. *See Wong Sun v. United States,* 371 U.S. at 486; *United States v. Thomas*, 955 F.2d at 211.

Under the circumstances presented in this case, all of the evidence following the illegal entry was the product of such illegal conduct and tainted by it, and therefore must be suppressed. *See Brown v. Illinois*, 422 U.S. 590 (1975); *Wong Sun v. United States*, 371 U.S. 471; *United States v. Thomas*, 955 F.2d 207.

## <u>CONCLUSION</u>

Based on the foregoing argument and authority, the evidence should have been suppressed and as a result, this Court should vacate Portis' convictions.

Respectfully submitted this 21st day of December 2009.

         /s/
Jennifer M. Newman, Esq., P.C.
Counsel for Petitioner, Brian Portis
7 East Franklin Street
Richmond, Virginia 23219
VSB # 45702
(804) 421-9975
(804) 643-1551 facsimile
jenewmn@rcn.com

## **REQUEST FOR ORAL ARGUMENT**

Counsel for appellant asserts that the issues raised in this brief may be more fully developed through oral argument, and respectfully requests the same.

## <u>CERTIFICATE OF COMPLIANCE</u>

1.      This brief of the appellant has been prepared using WordPerfect X3 software, Times New Roman font, 14 point proportional type size.

2.      EXCLUSIVE of the corporate  disclosure  statement; table of contents; table of authorities; statement with respect to oral argument; any addendum containing statutes, rules, or regulations, and the certificate of service, this brief contains 3,329 words.

I understand that a material misrepresentation can result in the Court's striking the

brief and imposing sanctions.  If the Court so requests, I will provide an electronic

version of the brief and/or a copy of the word or line print-out.

<u>December 21, 2009</u>                      <u>   /s/                                              </u>
Date                                          Jennifer M. Newman

## **CERTIFICATE OF SERVICE**

I hereby certify that on December 21, 2009, I electronically filed the

foregoing with the Clerk of the Court using the CM/ECF system which will send

notification of such filing to the following counsel of record:

Richard D. Cooke
Office of the U.S. Attorney
600 E Main St, Suite 1800
Richmond, VA 23219
Richard.cooke@usdoj.gov

_/s/_ _____

Jennifer M. Newman